**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACKSON NATIONAL LIFE | : | |
| INSURANCE COMPANY, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 12-5051 |
| | : | |
| JOHN E. HEYSER, as Executor of the | : | |
| Estate of William E. Keen, | : | |
| THOMAS JULIANO, and | : | |
| JOSEPH FREDERICK ALT, | : | |
| | : | |
| Defendants. | : | |

<u>MEMORANDUM</u>

BUCKWALTER, S. J.                                        September 18, 2013

Currently pending before the Court in this action is (a) John E. Heyser's ("Heyser")

Motion in Limine to Preclude the Testimony of Thomas Juliano and Joseph Frederick Alt and (b)

the Motion for Summary Judgment of Claimant Thomas Juliano ("Juliano") and Joseph

Frederick Alt ("Alt").  For the following reasons, Heyser's Motion in Limine is granted and

Juliano and Alt's Motion for Summary Judgment is granted.

# I.      FACTUAL RECORD

This case involves an interpleader action filed by Jackson National Life Insurance

Company to determine the proper recipient of an annuity.  The annuity was purchased by the

decedent, William E. Keen ("Keen"), on April 23, 2010, with a date-of-death value of

$394,770.33.  (Juliano & Alt Mot. Summ. J., Ex. A.)  Keen originally named his estate as the

beneficiary of the death benefit.  (<u>Id.</u>)  The annuity broker listed on the application is Claimant

Juliano.  Thereafter, on July 22, 2010, Keen signed an Annuity Service Request form, which changed the beneficiary of his annuity to Thomas Juliano and Joseph Frederick Alt (collectively "Claimants") in equal shares.

Keen passed away on April 30, 2012.  Under his Will, which he originally executed on September 1, 2010, the residuary beneficiaries of the estate consisted of six charities, including the Montgomery County Association for the Blind, Senior Adult Activities Center of Montgomery County, Norristown Ministries, Inc., Boy Scouts of America, Cradle of Liberty Council of Montgomery County, Eagleville Chapter 523 of the Patriotic Order of Sons of America, and Lower Providence Presbyterian Church.  (Juliano & Alt Mot. Summ. J., Ex. E.) The Will appointed John E. Heyser as Executor.  (Id.)  Notably, Heyser had previously been given a Power of Attorney over Keen's affairs via document executed on February 23, 2005. (Id., Ex. F.)

Subsequently, on May 29, 2012, Claimant Juliano submitted an Annuity Death Benefit Claim Form, seeking his share of the annuity.  (Juliano & Alt Mot. Summ. J., Ex. D.)  Executor Heyser contested that payment via letter dated June 5, 2012, as follows:

> Gentlemen:
>
> I understand that the above annuity policy purchased by William Keen improperly named Thomas Juliano, the brokerage agent who arranged for purchase of the policy, as a 50% beneficiary and that he has submitted claim forms requesting payment.
>
> On behalf of the estate, I object to payment of the policy proceeds, or any portion thereof, to Thomas Juliano, and request that payment be delayed until a determination is made concerning the legality and propriety of the brokerage agent being named a beneficiary is determined.
>
> Please advise me and my attorney, James L. Hollinger, if you need something

more at this time to await a determination. Also, if you plan to make payment despite this communication, please advise me immediately so that we can proceed with court action.

(Juliano & Alt Mot. Summ. J., Ex. F.) In light of this objection, Jackson National Life Insurance Company filed the present interpleader action, on September 4, 2012, and was dismissed from the matter upon deposit of the funds at issue with the Clerk of this Court.

## II.    MOTION IN LIMINE

By way of the pending Motion in Limine, Executor Heyser seeks to preclude consideration of any testimony or declarations from either Claimant Alt or Claimant Juliano pursuant to Pennsylvania's Dead Man's Act. This Act, which applies to federal diversity cases pursuant to Federal Rule of Evidence 601,[1] states that "[e]xcept as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract is dead . . . neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased . . . party, shall be a competent witness to any matter occurring before the death of said party . . ." 42 Pa. Cons. Stat. § 5930. The underlying policy seeks "to prevent the injustice which might flow from permitting the surviving party to an occurrence to testify favorable to himself and adversely to the decedent, which testimony decedent's representative would be in no position to refute." Bacon v. Riva, No. Civ.A.12-2498, 1993 WL 4132, at *2 (E.D. Pa. Jan. 4, 1993) (quoting Perlis v. Kuhns, 195 A.2d 156, 158 (Pa. Super. 1963)). In order for the Act to apply, three conditions must exist: "(1) the deceased must have had an actual right or interest in the matter at issue; (2) the interest of the

---

[1]  "Every person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 601.

witness—not simply the testimony—must be adverse; and (3) a right of the deceased must have passed to a party of record who represents the deceased's interest." Keegan v. Fahnestock & Co., Inc., No. Civ.A.95-5998, 1996 WL 530000, at *5 (E.D. Pa. Sept. 16, 1996); Olson v. N. Am. Indus. Supply, Inc., 658 A.2d 358, 364 (Pa. Super. Ct. 1995). When a person is disqualified, he may not testify as to any transaction which occurred before the decedent's death; the prohibition is not limited to the actual transaction at issue. Schroeder v. Jacquiss, 861 A.2d 885, 887 (Pa. 2004).

The protections of the Dead Man's Act are "highly technical" and may be "easily waived" by the protected party. Id. The common law principle on waiver is clear: "a decedent's representative waives the Act by taking the deposition of or requiring answers to interrogatories from an adverse party, whether or not he places the results of such discovery on the record." Id. at 890. Where, however, the estate refrains from engaging in such discovery, the waiver principle is not implicated. Id. Nor does the estate bear the responsibility of raising the Act "on every conceivable pretrial occasion when inquiries are made of an adverse party," so long as it is not the Estate that has made the inquiries. Id.

In the present case, all three conditions for application of the Act have been met. Decedent Keen had an actual right or interest in the proceeds of his life insurance annuity. Claimants Alt and Juliano have an adverse interest to the proceeds of the annuity against the Keen's estate. Finally, Keen's right has passed to Executor John E. Heyser, who is a party of record in this litigation.

Claimants now argue that the protections of the Dead Man's Act have been waived by the actions of Executor Heyser in accusing Juliano of using "improper influence" over Keen.

Pursuant to the principles set forth above, however, Claimants have failed to establish any such waiver. They have not shown that Heyser ever issued interrogatories to Claimants, requested their depositions, or even cross-examined them at any point. Moreover, Heyser properly objected to the Claimants' Declarations by filing this Motion in Limine. Finally, to the extent Claimants allege that Heyser's attack on a seemingly valid beneficiary designation is adverse to the estate and places Claimants' testimony at issue, their argument fails. Claimants fail to cite, and this Court has not found, any such case suggesting that an executor's mere challenge to a conveyance waives the protections of the Dead Man's Act.[2] Indeed, Heyser is acting entirely in his capacity as Executor of the Estate and maintains no adverse interest that somehow results in waiver. Accordingly, given the clear dictates of the Dead Man's Act, the Court declines to consider any testimony from Claimants Juliano or Alt.[3]

III. **MOTION FOR SUMMARY JUDGMENT**

A. <u>Standard of Review</u>

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute is

---

[2] The Court does not find persuasive Claimants' citations to cases from Florida and West Virginia for the interpretation of a Pennsylvania rule. Even so, the cases cited by Claimants do not support their argument as they deal with situations where the protected party attempted to use testimony from the silenced party. Moreover, Claimants' citations to "<u>American Jurisprudence</u>" with no volume or section number do little to aid their position.

[3] Notably, the Dead Man's Act applies only to oral testimony and not to written evidence. <u>In re Rider's Estate</u>, 409 A.2d 397, 400 (Pa. 1979); <u>Larkin v. Metz</u>, 580 A.2d 1150, 1153 (Pa. Super. 1990). Thus, an incompetent witness may be permitted to testify for the purpose of identifying documents. <u>Larkin</u>, 580 A.2d at 1153. In addition, under the plain operation of the Act, the Claimants are not precluded from testifying to events after Keen's death.

"material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "[T]he non-moving party must rebut the motion with facts in the record and cannot

rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley

Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006). If the non-moving party "fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex,

477 U.S. at 322. Moreover, the mere existence of some evidence in support of the non-movant

will not be adequate to support a denial of a motion for summary judgment; there must be

enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson,

477 U.S. at 249–50.

**B.**    **Discussion**

Claimants now seek summary judgment on the enforceability of the July 22, 2010 change

of beneficiary to designate Claimants Juliano and Alt as beneficiaries on the annuity at issue.

Heyser argues that by virtue of Juliano's confidential and fiduciary relationship with Keen, the

change is presumed to be a product of undue influence. Claimants respond that Heyser has failed

to show that Keen had a weakened mind susceptible to the type of undue influence that would

void the death benefit.

Prior to reaching the heart of the parties' dispute—the validity of the change of

beneficiary—the Court must first determine the standard to be applied to Executor Heyser's

challenge to the beneficiary designation. It is well-established under Pennsylvania law that "[t]he

designation of beneficiaries of life insurance . . . shall not be considered testamentary and shall

not be subject to any law governing the transfers of property by will." 20 Pa. Cons. Stat. §

6108(a). Based solely on that statute, Heyser asserts that the law of gifts, or *inter vivos* transfers,

must apply in this case. Under such law, any contestant of the gift can rebut the presumption of

validity by establishing that a confidential relationship existed between the donor and the donee at the time of the making of the alleged gift. Banko v. Malanecki, 451 A.2d 1008, 1010 (Pa. 1982). "A confidential relationship exists if the parties do not deal on equal terms ' . . . but, on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust justifiably reposed.'" Id. (quoting Estate of Dzierski, 296 A.2d 716 (Pa. 1972)). Once a confidential relationship is established, the burden then shifts to the donee to show that the gift was free of any taint of undue influence or deception. Estate of Clark, 359 A.2d 777, 781 (Pa. 1976). The challenger bears no burden of proving "weakened intellect" to void the beneficiary designation on the annuity at issue.

While, at first blush, this standard appears to control the present issue, the Court notes that 20 Pa.C.S. § 6108, standing alone, does not clearly dictate that *inter vivos* transfer law applies to this case. Under Pennsylvania law, a valid *inter vivos* gift requires donative intent and delivery, which divests the donor of all dominion and control over the property and invests the donee with complete control over the subject matter. Hera v. McCormick, 625 A.2d 682, 686 (Pa. Super. 1993). A revocable life insurance beneficiary designation that may be changed at any point prior to the donee's death does not have such characteristics. As such, cases applying Pennsylvania law have repeatedly held that a designation of beneficiaries that is revocable prior to death—like the one at issue—does not create an inter vivos transfer. Estate of Korn, 480 A.2d 1233, 1238 (Pa. Super. 1984) ("Since the designation of the beneficiaries by Rabbi Korn was revocable at any time prior to his death, his designation did not create an inter vivos or testamentary interest."); Equitable Life Assur. Soc. of U.S. v. Stitzel, 445 A.2d 523, 526 (Pa. Super. 1982) (finding that the designation of a revocable beneficiary in a life insurance policy is

neither a testamentary nor an inter vivos conveyance), <u>superseded on other grounds by</u> <u>In re Estate of Hoffman</u>, 54 A.3d 903 (Pa. Super. Ct. 2012). The United States Court of Appeals for the Third Circuit has expressly noted that "under current Pennsylvania law, the designation of a revocable life insurance beneficiary is neither an inter vivos nor a testamentary conveyance, vesting nothing in the beneficiary. A change in this result can only occur at the direction of the Pennsylvania legislature." <u>Manhattan Life Ins. Co of New York, N.Y. v . Evanek</u>, 762 F.2d 319, 322 (3d Cir. 1985)[4]

This unresolved characterization of life insurance beneficiary designations leaves the Court with somewhat of a conundrum as to what standard governs a challenge to a change of beneficiary designation form. To that end, the Court finds guidance in two cases applying Pennsylvania law to a dispute over entitlement to insurance proceeds. First, <u>Life Ins. Co. of N. Am. v. O'Brien</u>, 3 Phila. Co. Rptr. 529 (Pa. Com. Pl. 1980), like the present action, involved an interpleader regarding life insurance proceeds. <u>Id.</u> at 530–31. The originally named beneficiary challenged the validity of a designation executed by the insured less than two months before his death on the grounds that the insured lacked the necessary legal capacity to make the change of beneficiary and that he was subject to the undue influence of the named beneficiary. <u>Id.</u> at 530.

---

[4] Heyser cites <u>Fiumara v. Fiumara</u>, 427 A.2d 667 (Pa. Super. 1981) for the proposition that, in beneficiary designation cases, the law of gifts and not wills is applicable. <u>Fiumara</u> held only that the designation of beneficiaries of pension plans—as opposed to life insurance plans—is deemed to be an inter vivos transaction. <u>Id.</u> at 671 n.6. As pension plans and life insurance plans convey substantially different interests to the holders, the Court does not deem this case dispositive of the present issue.

Heyser also cites <u>Pasternostro Estate</u>, 17 Fiduc. Rep. 2d 220 (O.C. Montg., J. Ott, 1996) for the same proposition. Notwithstanding the Court's broad access to the latest in legal research technology, we have been unable to locate any such document and Heyser has not provided a copy.

The court, confronting a dilemma similar to the present case, turned to guidance from a case

arising out of the Seventh Circuit, wherein the court stated:

> The similarity between disposition by life insurance and by will is at once apparent.
> The date of the happening of the events is the same—the death of a maker of the
> documents. The positions of the legatee and the beneficiary are legally quite similar.
> Neither has any vested or contractual rights which can not be lost either by the
> drawing of a new will or a change in the beneficiary. If we pass from the legal
> similarities to the more practical ones, such as the purposes which actuate one in
> drawing a will and in . . . taking out life insurance, in the selection of or naming the
> legatee and the beneficiary, the date when the intended and arranged-for help to
> legatee or beneficiary shall occur, namely, upon the death of the insured or the
> testator, we are even more impressed.

Id. at 532 (quoting Shields v. Barton, 60 F.2d 351 (7th Cir. 1932)). Notwithstanding 20 Pa.C.S.

§ 6108, the court found that, given the similarity between life insurance and wills, the standards

for challenging a will—set forth in In re Estate of Clark, 334 A.2d 628 (Pa. 1975)—should apply

to a challenge to a life insurance beneficiary designation. Simply put:

> Once the defendant-proponent presents evidence of the formality of execution of the
> Change of Beneficiary form, a presumption of lack of undue influence arises, shifting
> the burden of coming forward with evidence of undue influence to the plaintiff-
> contestant. . . . However, the contestant may shift the onus of going forward with
> evidence back to the proponent under the rule that where (1) a person in a
> confidential relationship (2) receives the bulk of the testator's property (3) from a
> testator of weakened intellect, the burden of proof is upon the person occupying the
> confidential relation to prove affirmatively the absence of undue influence.

O'Brien, 3 Phila. Co. Rptr. at 533 (internal quotations and quotation marks omitted).

Similarly, in a very recent case from this Court, the same issue arose. Again facing a

dispute over the proper beneficiary of life insurance proceeds, the court determined that once the

proponent of the beneficiary form presents evidence of the formality of execution of the change

of beneficiary form, a presumption of lack of undue influence arises. Jones v. Steltz, No.

Civ.A.12-2541, 2013 WL 4787219, at *1 (E.D. Pa. Sept. 6, 2013). The burden then shifts to the

proponent to show the absence of undue influence *only* if the challenger establishes that (1) the defendant was in a confidential relationship with the decedent; (2) the defendant received the bulk of the decedent's property; and (3) the decedent was of weakened intellect. Id.

Absent any other dictates from the Pennsylvania appellate courts, this Court likewise adopts these standards. Applying them to the present case, summary judgment must be granted in favor of Claimants. Neither party disputes that Keen formally executed an Annuity Service Request form officially designating Claimants Juliano and Alt as beneficiaries in equal shares. The form was notarized and properly submitted to Jackson National Life Insurance Company. Accordingly, a presumption of the absence of undue influences arises.

To rebut this presumption, Executor Heyser must now establish that Juliano and/or Alt were in a confidential relationship with Keen, that Juliano and/or Alt received the bulk of Keen's property, and that Keen was of weakened intellect. Under the second prong, there is little question that Juliano and Alt were to receive the entirety of the life insurance policy. Moreover, under the first prong, Heyser has arguably proven that Keen was in a confidential relationship with Juliano. Juliano was Keen's stockbroker for seventeen years and the broker who completed all of the paperwork for both the purchase of the annuity and for the beneficiary designation change. See Harold ex rel. Harold v. McGann, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005) ("A confidential relationship exists 'whenever the law recognizes that a party is bound to act for the benefit of another, and can take no advantage to himself.'") (quoting Gaines v. Krawczyk, 354 F. Supp. 2d 573, 580 (W.D. Pa. 2004). Further, Heyser has presented evidence that Keen loaned Juliano between $20,000 and $25,000 during the course of their relationship and that Juliano also received a substantial commission in the amount of $19,250 for the purchase of the subject

annuity.  (Heyser Resp. Opp'n Summ. J., Ex. A.)

Where Heyser's argument falters, however, is in his failure to prove, under the third prong, that Keen was of weakened intellect at the time he made his designation.  "The 'weakened intellect' which must be shown in order to establish a *prima facie* case of undue influence upon the testator need not amount to testamentary incapacity."  In re Estate of Luongo, 823 A.2d 942, 963 (Pa. Super. Ct. 2003).  "Although [Pennsylvania] cases have not established a bright-line test by which weakened intellect can be identified to a legal certainty, they have recognized that it is typically accompanied by persistent confusion, forgetfulness and disorientation."  Owens v. Mazzei, 847 A.2d 700, 707 (Pa. Super. Ct. 2004).

In this case, Heyser does not even acknowledge the element of "weakened intellect," let alone establish by clear and convincing evidence that Keen suffered from this infirmity. Moreover, the undisputed evidence of record undermines any finding of "weakened intellect." The disputed change of beneficiary was executed on July 22, 2010.  As noted by Claimants, Keen made several other decisions regarding his personal and financial affairs between 2010 and 2012 time period, including making a will on September 1, 2010 and changing that will by codicils in April 2011 and April 2012.  (Juliano & Alt's Mot. Summ. J., Ex. E.)  Moreover, in 2012, Keen purchased, through Juliano, another $175,000 annuity, all of which went to Keen's estate.  (Dep. of John Heyser ("Heyser Dep.") 130:16–131:25.)  Other than the current beneficiary change form, Executor Heyser has not lodged any diminished capacity objection to the validity of any of these documents, despite the fact that the second annuity was purchased weeks before Keen's death and the last codicil was executed only two days before Keen's death.  James Gibbons, the notary public who witnessed Keen's signature to the Annuity Service Request Form, stated that

although he did not have a specific recollection of that particular notarization, "based upon [his] habit and practice as a notary public . . . [he] would not have notarized Mr. Keen's signature if it appeared he was mentally impaired and unable to understand what he was signing or he was not signing the document of his own volition." (Id., Ex. G ¶ 4.) Thomas Purcell, a friend of Keen for over ten years before his death, attested that in the spring and summer of 2010, Keen was of "sound mind, and acted with reason and understanding." (Id., Ex. H ¶ 4.) He went on to note that during that time period, Keen acted out of his own will and independent judgment and Purcell never observed Keen submitting to pressure from another person to make a decision that he did not want to make. (Id. ¶¶ 4–5.) Finally, Heyser himself admitted that Keen was fully capable of making financial decisions up until the time of his death. (Heyser Dep. 127:21–128:5, 141:12–21, 143:14–144:9.) In short, the record is devoid of any evidence suggesting that Keen had any weakened intellect such that he could be subjected to undue influence from an individual, like Juliano, who maintained a confidential and fiduciary relationship with him.

While the Court maintains some concerns about the means by which Juliano, acting as a broker for Keen, managed to secure his place as a beneficiary on a fairly substantial life insurance policy, the record presented requires that we respect the wishes of the decedent. Keen properly and formally executed the change of beneficiary two years prior to his death, thereby creating a presumption of lack of undue influence. Thereafter, Keen maintained the legal right to revoke that designation and name a new beneficiary, but chose to not do so. Executor Heyser has now failed to rebut the presumption of no undue influence because he has not proven, *inter alia*, that Keen was of weakened intellect. Accordingly, the change of beneficiary is deemed valid.

**IV.     CONCLUSION**

In light of the foregoing, the Court makes two rulings.  First, pursuant to the Dead Man's Act, the Court grant Executor Heyser's Motion in Limine and decline to consider any testimony or declarations from Claimants Juliano and Alt.  Second, the Court finds no genuine issue of material fact as to the validity of the change of beneficiary form.  Therefore, the Motion for Summary Judgment by Claimants Juliano and Alt is granted and judgment shall be entered in their favor.